Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 447 | **DATE** | January 30, 2012 |
| **CASE TITLE** | *Gill v. City of Chicago* | | |

**DOCKET ENTRY TEXT**

For the reasons stated below, the City's motion for summary judgment [68-1] is granted. The clerk is directed to enter a Rule 58 judgment in favor of the City and terminate this case from the court's docket.

■[ For further details see text below.]

00:00

## STATEMENT

John Gill sued the City of Chicago alleging a violation of the Age Discrimination in Employment Act. The City moved for summary judgment. For the reasons stated below, the motion for summary judgment is granted.

Prior to detailing the facts and addressing the substance of Gill's claim, the court notes that Gill proceeded through most of the case pro se. However, after the City filed its motion for summary judgment, counsel requested leave to file an appearance on Gill's behalf and an extension of the summary judgment briefing schedule. Both motions were granted and Gill's new attorney filed an appearance. Gill, however, failed to file a response to the summary judgment motion. Accordingly, the court rules on the motion without the benefit of his views.

**Facts**

As an initial matter, the court notes that under Northern District of Illinois Local Rule 56.1, a party's properly-filed statement of facts will be "deemed to be admitted unless controverted by the statement of the opposing party." L.R. 56.1(b)(3)(C). Because Gill elected not to respond to the City's motion, the following facts are deemed admitted.

Gill worked for the City of Chicago for a few months in 1979 and then from September 22, 1981 through December 31, 2008. He was a Manager of Finance in the Operations and Maintenance Finance and Capital (O&M) Division of the City of Chicago's Department of Aviation ("DOA") from June 16, 1996 until his position was eliminated during a citywide, budgetary reduction in force on December 31, 2008. Gill turned 49 in May, 2008.

In 2008, before Gill left the City, the responsibilities of the O&M Finance Section of the Department of Aviation fell roughly into several categories: revenue, audit, rates and charges, budget, accounts payable, and accounts receivable. In addition, the O&M Finance Section was occasionally given special projects that did not fall into one of these categories and were assigned to individuals based on their availability and expertise. In 2008, DOA Deputy Commissioner Nafees Ahmed directly supervised Gill, DOA Manager of Finance John Laera, DOA Manager of Finance James Capasso, and Financial Officer John Mikos in performing the duties in O&M.

Ahmed turned 54 in March 2008, Laera turned 38 in May 2008, Capasso turned 41 in October 2008 and Mikos tunred 47 in January 2008. Ahmed reported to Managing Deputy Commissioner Michael Zonsius who turned 48 in March 2008. Although Gill, Laera and Capasso each held the same title, they performed different duties. In 2008, Gill maintained the budget for the DOA. Laera was primarily responsible for rates and charges and for auditing.

Starting in approximately December 2007, Laera was assigned to the office of the City's Chief Financial Officer to work on the Midway Privatization initiative, and he did not return to full-time work at the airport until approximately January 2010. During that time, Mikos assisted Laera with duties relating to rates and charges and auditing, as necessary, and Gill took over projection of non-airline revenue for both airports. Capasso was responsible for accounts payable and assisted Gill, as necessary. Mikos was responsible for revenue and accounts receivable.

Gill did not evaluate the performance of his coworkers in the O&M Finance Section nor did he have access to the personnel files of his coworkers. Laera and Capasso performed above average, well above the minimum expectations of their positions, and did not have performance issues. Gill's 2007 evaluation, which was completed on February 22, 2008, demonstrates that, unlike the two other Managers of Finance, Gill barely scored in the "meets expectations" category for his position. On a regular basis, Gill failed to notify his supervisor, Ahmed, that he could not complete his assignments by the deadline that had been set. Instead, Gill frequently called in sick on the days his assignments were due. In order to ensure that work was completed in a timely, competent fashion, Ahmed assigned Capasso to assist Gill with time-sensitive projects. Ahmed verbally counseled Gill on several occasions regarding talking loudly on the phone during work hours regarding personal matters, such as golf outings, being away from his desk and coming in late and leaving early without permission.

Gill's termination on December 31, 2008, was, according to the City, part of a citywide, budgetary reduction in force. In September 2008, the City's office of Budget and Management directed the operating departments of the City to cut costs by eliminating personnel positions from their budgets. The Budget Office ordered the DOA to cut 53 positions from its budget. To comply with this directive, managers from four of the five DOA divisions–Administration, Operations, Midway, and Finance – participated in a meeting in September 2008 to discuss the positions that could be eliminated from the Department's budget without affecting Department operations. The Security Division was not included because a determination had been made (by whom, it is not clear) that no layoffs would be made in that division due to operational needs.

In September 2008, William McKeown (Assistant Commissioner, DOA Administration Division), Angela Manning (Managing Deputy Commissioner, DOA Administration Division), Al Perez (Managing Deputy Commissioner, DOA Operations Division), Erin O'Donnell (Deputy Commissioner, DOA Midway Division), Jill McGee (Deputy Commissioner, DOA Marketing, Commissioner's Office), and Zonsius participated in a meeting to discuss the positions that the DOA could eliminate in the December 31, 2008

reduction in force to meet the target number set by the City's Budget Office.

DOA Commissioner Richard Rodriguez instructed the participants at the meeting to eliminate positions that would have the least operational impact on the DOA. Zonsius determined, based on his experience and familiarity with the duties performed by the employees within his division, that the elimination of Gill's position would have the least operational impact on the Finance Division and on the DOA as a whole. He therefore recommended that Gill's position be included in the reduction in force. He also recommended eliminating three other positions in the Finance Division. Zonsius attests that he did not consider Gill's age or the ages of the other personnel in making the elimination decisions. Relying on the recommendations made by the managers within his department, Rodriguez, who turned 38 in December 2008, made the final elimination decisions. According to Rodriguez, like Zonsius, he did not consider Gill's age or the ages of the other personnel in making the elimination decisions.

On October 1, 2009, Gill filed a charge with the EEOC alleging that he was laid off and discriminated against based on his age. He states that he "felt Age Discrimination was involved as two younger less senior staff members were kept on in the same title." On January 22, 2010, Gill filed the instant complaint alleging one count of age discrimination.

During his deposition, Gill states that no one ever told him that he was laid off because of his age, no one at the City made any comments about his age, he does not know if the City laid off anyone else because of their age, and he has no personal knowledge of the names or ages of the other employees in the DOA whose positions were eliminated during the December 31, 2008 reduction in force.

**Standard**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Thus, in order to withstand a motion for summary judgment, the nonmoving party must show that a dispute about a genuine issue of material fact exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party may not merely rest upon the allegations or details in his pleading, but instead, must set forth specific facts showing there is a genuine issue for trial. *See Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

**Analysis**

With respect to his age discrimination claim, Gill must demonstrate that he suffered an adverse employment action because of his age. *See Monaco v. Fuddruckers, Inc.*, 1 F.3d 658, 660 (7th Cir. 1993). The Supreme Court has recently stated that to prevail in an action under the Age Discrimination in Employment Act "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that [an unlawful motive] was the 'but-for' cause of the challenged ... decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, —, 129 S.Ct. 2343, 2351 (2009). Gill may attempt to prove discrimination by either the direct or indirect methods of proof. *Van Antwerp v. City of Peoria*, 627 F.3d 295, 297 (7th Cir. 2010).

Direct method

Under the direct method, Gill "can meet his burden of proof by offering direct evidence of animus-the

so-called 'smoking gun'-or circumstantial evidence which establishes a discriminatory motive on the part of the employer through a longer chain of inferences." *Id*. (*citing Mach v. Will County Sheriff*, 580 F.3d 495, 499 (7th Cir. 2009).[1]

Direct evidence is evidence that would prove discriminatory intent without reliance on inference or presumption. *Venturelli v. ARC Cmty. Servs., Inc*., 350 F.3d 592, 599 (7th Cir. 2003). Direct evidence is "akin to an admission by an employer." *O'Leary v. Accretive Health*, Inc., 657 F.3d 625, 630 (7th Cir. 2011). Circumstantial evidence is evidence from which a jury might infer intentional discrimination but without a direct admission from the employer. *Id.* It includes: "(1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination." *Hemsworth v. Quotesmith.Com., Inc*. ., 476 F.3d 487, 491 (7th Cir. 2007).

Gill has failed to establish under the direct method that age discrimination was the "but-for" reason for the termination of his position.

Indirect Method

As noted by the Seventh Circuit,

> To establish a prima facie case of age discrimination under the indirect method, [the plaintiff] must prove that (1) he is a member of a protected class (which he is, being 40 or older); (2) his performance met the company's legitimate expectations; (3) despite his performance he was subject to an adverse employment action (again, not at issue); and (4) the company treated similarly situated employees under 40 more favorably. If [the plaintiff] satisfies these criteria, the company may provide a legitimate, nondiscriminatory reason for the termination. Assuming the company offers as much, [the plaintiff] may challenge the stated reason as a pretext for discrimination. Again, however, the ultimate burden to prove intentional discrimination always remains with [the plaintiff].

*Martino v. MCI Communications Services, Inc*., 574 F.3d 447, 453 (7th Cir. 2009) (internal citations omitted).

Given the lack of a response, Gill fails to present any evidence in support of his *prima facie* case and none is apparent from the record. As such, Gill also cannot establish age discrimination under the indirect method.

**Conclusion**

For the reasons stated above, the City's motion for summary judgment is granted. The clerk is directed to enter a Rule 58 judgment in favor of the defendant and terminate this case from the court's docket.

---

1. As the Seventh Circuit has noted, "[w]hether [the] burden shifting analysis survives the Supreme Court's declaration in *Gross* in non-Title VII cases, remains to be seen." *Kodish v.*

*Oakbrook Terrace Fire Prot. Dist.*, 604 F.3d 490, 501 (7th Cir. 2010).  Another court in this district has noted that it "share[s] in the Seventh Circuit's skepticism as to whether the burden-shifting approach retains vitality after *Gross*, because the evidence needed to make out a prima facie case of but-for causation under the direct method will be the same evidence a plaintiff would use to show that a defendant's stated reasons were merely a pretext for the adverse action taken against the plaintiff under the indirect, burden-shifting method." *Zitzka v. Village of Westmont*, 743 F. Supp.2d 887, 915 n.11 (N.D. Ill. 2010).  Despite the uncertainty, the court addresses the claim under both methods of proof absent any other direction from the Supreme Court or the Seventh Circuit.